# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**TEOKA S. WILLIAMS,**
     **Plaintiff,**          **CASE NO.: 2:18-cv-12522-VAR-MKM**
                                 **HON.: Victoria A. Roberts**

**v.**

**BEAUMONT HEALTH,**
     **Defendant.**
_____/

**GAFKAY LAW, PLC**
**BY:  JULIE A. GAFKAY (P53680)**
**Attorney for Plaintiff**
**175 S. Main Street**
**Frankenmuth, MI 48734**
**(989) 652-9240**
**jgafkay@gafkaylaw.com**

**BUTZEL LONG**
**BY:  REGAN K. DAHLE (P53975)**
       **MICHAEL GRIFFIE (P79836)**
       **DOAA K. AL-HOWAISHY (P82089)**
**Attorneys for Defendant**
**301 East Liberty, Suite 500**
**Ann Arbor, MI 48104**
**(734) 995-3110**
**dahle@butzel.com**
**griffie@butzel.com**
**al-howaishy@butzel.com**
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

NOW COMES Plaintiff, Teoka Williams, by and through her attorney, GAFKAY LAW, PLC, and hereby opposes Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. As set forth more fully in the accompanying brief, there are genuine issues as to material facts, which preclude summary judgment.

Plaintiff admits Concurrence was sought by Defendant, but denied, by Plaintiff at the settlement conference held on April 19, 2019.

WHEREFORE, Plaintiff, Teoka Williams, respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

GAFKAY LAW, PLC

Dated: 5/31/2019          s/Julie A. Gafkay
                         Julie A. Gafkay (P53680)
                         Attorney for Plaintiff
                         175 S. Main Street
                         Frankenmuth, Michigan  48734
                         (989) 652-9240
                         jgafkay@gafkaylaw.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TEOKA S. WILLIAMS,**
    Plaintiff,          **CASE NO.: 2:18-cv-12522-VAR-MKM**
                                  **HON.: Victoria A. Roberts**

v.

**BEAUMONT HEALTH,**
    Defendant.
_____/

**GAFKAY LAW, PLC**
**BY:  JULIE A. GAFKAY (P53680)**
**Attorney for Plaintiff**
**175 S. Main Street**
**Frankenmuth, MI 48734**
**(989) 652-9240**
**jgafkay@gafkaylaw.com**

**BUTZEL LONG**
**BY:  REGAN K. DAHLE (P53975)**
       **MICHAEL GRIFFIE (P79836)**
       **DOAA K. AL-HOWAISHY (P82089)**
**Attorneys for Defendant**
**301 East Liberty, Suite 500**
**Ann Arbor, MI 48104**
**(734) 995-3110**
**dahle@butzel.com**
**griffie@butzel.com**
**al-howaishy@butzel.com**
_____/

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FRCP 56

# **TABLE OF CONTENTS**

Index of Authority……………………………………………………ii, iii

Statement of Issues Presented…………………………………………iv

Statement of Controlling/Most Appropriate Authority……………v

Response to Defendant's Statement of Facts………………………...1-2

Plaintiff's Statement of Material Facts……………………………2-7

Argument……………………………………………………………7-26

I.  There is a Genuine Issue of Material Fact of Intentional Race
    Discrimination………………………………………………..7-15

II. There is a Genuine Issue of Material Fact that Plaintiff
    Suffered an Adverse Employment Action for purposes of
    her Title VII and Elliott-Larsen Civil Rights Claims………….15-18

III. Plaintiff's Testimony Concerning What the Patient Said
     Goes to Credibility and is Improper to Exclude………………..19-20

IV.  Plaintiff's Testimony as to What the Patient Said is Admissible
     Even if not fully Documented……………………………………20-22

V.  Plaintiff's Testimony about the Patient's Statements is
    Admissible and Not Hearsay……………………………………..22-26

Conclusion……………………………………………………………26

# INDEX OF AUTHORITY

*Amini v. Oberlin College,*
440 F.3d 350 (6th Cir. 2006)……………………………………………8

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ……………18

*Blalock v. Metals Trades, Inc.,*
775 F.2d 703  (6th Cir. 1985)…………………………………………8

*Bowman v. Shawnee State Univ.,*
220 F.3d 456 (6th Cir. 2000)……………………………………………16

*Brant v. Curtis,*
138 Fed. Appx. 734 (6th Cir. 2005)…………………………………23, 24

*Brown v. Board of Education,*
347 U.S. 483 (1954)……………………………………………………18

*Celotex Corp. v. Catrett,*
477 U.S. 317,  106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)…………………7

*Chaney v. Plainfield,*
612 F.3d 908 (7th Cir. 2010)…………………………………………9, 10, 12

*Crane v. Mary Free Bed Rehab. Hosp.*
2015 U.S. Dist. LEXIS 182064……………………………………………16

*Detroit Police Officers' Ass'n v. Young,*
608 F.2d 671 (1979)……………………………………………………24

*DiCarlo v. Potter,*
358 F.3d 408 (6th Cir. 2004)……………………………………………8

*E.E.O.C. v. Konica Minolta Bus. Solutions U.S.A., Inc.,*
639 F.3d 366 (7th Cir. 2011)……………………………………………10

*Ferrill v. Parker Group, Inc.,*
168 F.3d 468 (11th Cir. 1999)…………………………………………9, 10

*Hanson v. Madison Co. Det. Ctr.,*
736 Fed. Appx. 521 (6th Cir. 2018)……………………………………19

*Johnson v. Univ. of Cincinnati,*
215 F.3d 561 (6th Cir. 2000)……………………………………………8

*Maggard v. Ford Motor Co.,*
320 Fed. Appx. 367 (6th Cir. 2009)……………………………………24

*McCrary v. Oakwood Healthcare, Inc.*,
170 F. Supp. 3d 981 (E.D. Mich. 2016)............................9, 11, 12, 16
*Michael v. Caterpillar Fin. Services Corp.*,
496 F.3d 584 (6th Cir. 2007)...................................................15
*Miller v. Texas State Bd. Of Barber Examiners*,
615 F.2d 650 (5th Cir. 1980).....................................................16
*Patterson v. UPMC South Hills Health System Home Health, L.P.*,
2005 U.S. Dist. LEXIS 47610....................................9, 11, 12, 17
*Plessy v. Ferguson*,
163 U.S. 537 (1896)..............................................................18
*Sharp v. Aker Plant Servs. Group*,
726 F.3d 789 (6th Cir. 2013)......................................................9
*Tally v. Bravo Pitino Restaurant*,
61 F.3d 1241 (6th Cir. 1995)........................................22, 24, 25
*United States v. West*,
2011 U.S. Dist. LEXIS 34520.................................................25
*Williams v. Cloverland Farms Dairy, Inc.*,
78 F. Supp. 2d 479 (D. Md. 1999)..........................................17
*Yates v. Hagerstown Lodge No. 212*,
878 F. Supp. 788 (D. Md. 1995).............................................17

## Statutes

42 U.S.C. § 1981.....................................................................7
42 U.S.C. § 2000e-2(e)..........................................................16
42 U.S.C. § 3000e-2(a)(2).......................................................17
MCL 37.2202 .........................................................................17

## Rules

Fed.R.Civ.P. 56.....................................................................27
Fed.R.Civ.P.8(a)(2)................................................................21
Fed.R.Evid. 803(2), 803(3), 803(4) 803(6)...........................22,23, 24

## **STATEMENT OF ISSUES PRESENTED**

I.   Whether There is a Genuine Issue of Material Fact of Intentional Race Discrimination?

Plaintiff answers Yes.

II.   Whether there is a Genuine Issue of Material Fact that Plaintiff Suffered an Adverse Employment Action for Purposes of her Title VII and Elliott-Larsen Civil Rights Claims?

Plaintiff answers Yes.

III.   Whether Plaintiff's Testimony  Concerning What the Patient Said Goes to Credibility and is Improper to Exclude?

Plaintiff answers Yes.

IV.   Whether Plaintiff's Testimony as to What the Patient Said is Admissible Even if Not Fully Documented?

Plaintiff answers Yes.

V.   Whether Plaintiff's Testimony about the Patient's Statements is Admissible and Not Hearsay?

Plaintiff answers Yes.

# <u>STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

## <u>Federal Statutes</u>
42 U.S.C. § 1981
42 U.S.C. § 2000e

## <u>Michigan Statute</u>
MCL 37.2202

## <u>United States Supreme Court</u>
*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

## <u>Sixth Circuit</u>
*Amini v. Oberlin College*,
440 F.3d 350, 358, (6th Cir. 2006)

*Talley v. Bravo Ptino Restaurant*,
61 F.3d 1241 (6th Cir. 1995)

## <u>United States District Court for the Eastern District of Michigan</u>
*McCrary v. Oakwood Healthcare Inc.*,
170 F.Supp.3d 981 (E.D. Mich. 2016)

## <u>RESPONSE TO DEFENDANT'S STATEMENT OF FACTS</u>

Plaintiff admits Defendant's paragraphs 2, 4-7, 9, 12, 14, 16, 19, and 21.

1.    Plaintiff denies she is still employed with Defendant.  She was terminated on May 22, 2019.

3.    Plaintiff denies the progress note states the patient became upset.

8.    Plaintiff denies Crystal Kopriva, f/k/a Crystal Fell (hereinafter "Kopriva") tried to resolve the patient's concern.  The patient did not express any legitimate concern for not wanting Plaintiff as her nurse. (Ex. 4, p. 31).

10.    Plaintiff denies she told Kopriva she was okay with this plan and not upset. Plaintiff, who was very upset, wanted Kopriva to tell the patient it was not appropriate and Plaintiff would continue care.  (Ex. 1, pp. 85, 152; Ex. 4, p. 20).

11.    Plaintiff admits she discarded her notes after reducing those notes to an email. Plaintiff had a pending EEOC charge on a different matter before her notes were created so the notes would necessarily have been discarded after her EEOC charge. (Exhibit 11).

13.   Plaintiff consistently testified the phone call she heard was before she got Kopriva. Plaintiff admits, although the precise time of events may be wrong, her progress notes are accurate as to what happened.

15.   Plaintiff denies her shift ended at 7:30 a.m.  Plaintiff was scheduled until 8:00 a.m., but did not get off until 8:30 a.m. (Ex. 1, pp. 54, 56).

17.   Admit, however, testimony is at pages 34-35 of Ward's deposition.

18.   Plaintiff admits Antoinette Ward ("Ward") testified she met with the patient and the patient allegedly said Plaintiff was a little rough with her when she was trying to get out of the bed to go to the bathroom. Plaintiff further states the patient was never asked whether she made a request based on race or referred to Plaintiff as a "black bitch."  (Exhibit 2, p. 26).

20.   Plaintiff denies Ward apologized to her for remarks she overheard the patient make. (Exhibit 1, p. 191).

## **PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

22.   Defendant does not have a policy to address when a patient requests care based on the race of the caregiver.  (Ex. 5, pp. 8-9; Ex 3, p. 28; Ex. 4, p. 24).

23.   The patient told Plaintiff she did not want her touching her, although a white nursing assistant could.  (Ex. 1, pp. 81, 83).  The patient asked to speak with the nurse in charge who was the assistant clinical manager, Kopriva.  (Ex. 1, pp. 80, 101; Ex. 3, p. 26).

24.   Plaintiff overheard the patient say she wanted a different nurse and, "they had the audacity to give me a black nurse."  (Ex. 1, pp. 44-45).

25.   Plaintiff and Shakina Kolanda ("Kolanda") both heard the patient say, "I do not want that black bitch taking care of me," before Plaintiff complained to Kopriva, which Plaintiff eventually put in the patient's progress note before her shift ended.  (Ex. 1, p. 65, 72, 88-89, 91, 94-95; Ex. 8, progress note; Ex. 6, pp. 18 and 26).

26.   Kopriva based on what Plaintiff told her, she understood the patient did not want Plaintiff to care for her based on race.  (Ex. 4, pp. 22-24).

27.   Plaintiff heard the patient tell Kopriva she did not want Plaintiff because of Plaintiff's race when Plaintiff was just outside the patient's door.  (Ex. 1, p. 48).

28.   The patient did not give a legitimate reason why she did not want Plaintiff to care for her; Kopriva admitted simply suggesting Plaintiff had

an attitude is not legitimate.  (Ex. 1, p. 102; Ex. 4, p. 31).  Plaintiff heard the patient tell Kopriva she did not want that "black lady" or "black nurse."  (Ex. 1, pp. 50, 53, 74-75, 119; Ex. 5, p. 9).

29.  Kopriva never asked the patient if she called Plaintiff a "black bitch" or whether her request was based on race.  (Ex. 4, pp. 30 and 48).

30.  Kopriva told Plaintiff and others if either patient in Room 881 put the call light on to let Olivia Moylan ("Moylan"), who is White, go in the room instead of Plaintiff.  (Ex. 1, p. 53; Ex. 6, p. 11).  Moylan later complained to Kopriva about having to take care of both patients and passing medications for both patients in the room, which Moylan denied. (Ex. 4, p. 40; Ex. 7, p. 33).

31.  The patient care was not properly transferred to Moylan from Plaintiff; a proper transfer involves a nurse-to-nurse report, which never took place regarding the patients in Room 881.  (Ex 1. p. 57; Ex. 7, p. 19).

32.  After Plaintiff was removed from providing care to the patient, Kopriva and Moylan gave medications to the patient instead of Plaintiff at 4:55 a.m. and 7:27 a.m. (Ex. 4, pp. 45-46).

33.   Moylan went in the room for Plaintiff to assist with needs such as water, socks, and heating pack; Plaintiff would get it and give it to Moylan to give to the patients.  (Ex. 1, p. 58).

34.   Plaintiff was asked to sign/initial hourly rounding sheets for Moylan with regard to the patients in 881, even though she had not done hourly rounds for the patients after being removed from the room.  (Ex. 1, pp. 134, 137-138).

35.   Plaintiff was scheduled to work 11:30 p.m. to 8:00 a.m., but stayed later, until approximately 8:30 a.m., when she gave the report to the oncoming nurse for the patients.  She was required to give a report for the patients in Room 881 even though she was barred from the room for several hours before the report.  (Ex. 1, pp. 54, 56; Ex. 7, p. 26).

36.   Kopriva reported the incident to her supervisor, Ward, because Plaintiff was upset.  (Ex. 4, pp. 49-50).  She also told Ward Plaintiff said she was  called a "black bitch", although Ward denies being told that. (Ex. 4, p. 55; Ex. 2, p. 17).

37.   Ward reviewed the progress notes then talked to the patient.  (Ex. 2, p. 20).   Ward admitted if the patient was heard calling a caregiver a "black bitch" and requested not to have that caregiver, it related to race.

(Ex. 2, p. 29).  Ward admitted Plaintiff was concerned she was removed from caring for the patient based on race.  (Ex. 2, p. 41).  Notably, despite Ward claiming she talked with the patient, she never recorded a patient encounter, just as Kopriva had failed to record her encounter.  (Ex. 2, p. 30; Exhibit 8).

38.    When Plaintiff was leaving after her shift on November 2, 2017, she saw Kelly ("Fildew"), a human resources employee, and Plaintiff was visibly upset.  (Ex. 1, pp. 166).  Plaintiff tried not bursting into tears as she briefly told Fildew what had just happened; Fildew told Plaintiff to email her.  (Ex. 1, p. 167).

39.    After Fildew told Plaintiff to send her an email, Plaintiff took down some handwritten notes  which were reduced to her email.  (Ex. 1, p. 167; Ex. 9).  The notes were then discarded which was well before Plaintiff's lawsuit and her retaining counsel, but after her EEOC charge, because that was already pending regarding another issue.  (Ex. 1, p. 109, Ex. 10).

40.    A meeting in human resources took place on November 8, 2017 with Plaintiff, human resource representatives and managers.   (Ex. 11).  Fildew recorded minutes of the meeting which state, in part, "Teoka

stated that the patient in 881-bed #2 stated she did not want her to be her nurse because she was black.  (Ex. 10; Ex. 1, pp. 26, 188; Ex. 3, p. 23).

41.   At the meeting, Plaintiff was told patients have the right to refuse care for whatever reason.  Plaintiff was told a patient requesting care based on race is no different from a Middle Eastern female patient requesting not to have a male as her nurse.  (Ex. 1, p. 190; Ex. 11). Indeed, Fildew admitted nobody said patient requests based on race are not honored by Defendant.  (Ex. 3, pp. 35-36).

42.   Fildew never received anything in writing relating to any type of investigation, although there is typically something put in writing if a manager investigates.  (Ex. 3, p. 34, Ex. 2 p. 39).  Ward's investigation included only talking with Kopriva and Olivia.  (Ex. 2, p. 35).

## **ARGUMENT**

I.   **There is a Genuine Issue of Material Fact of Intentional Race Discrimination**.

To establish a claim for racial discrimination under Section 1981, a plaintiff must plead and prove that (1) she belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against her on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated

7

in section 1981(a). *Amini v. Oberlin College* , 440 F.3d 350, 358, (6th Cir. 2006).

The Sixth Circuit has held the second element referred to as the "intent" element of a Section 1981 claim can be established by either direct evidence or through circumstantial evidence. *Id*., citing *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985). When established by circumstantial evidence, the Sixth Circuit has held the *McDonnell Douglas/Burdine* tripartite test is appropriate. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Under the *McDonnell Douglas* standard once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason, then the plaintiff must prove the proffered reason was pretext. *Id*. However, when there is direct evidence, like the present case, a plaintiff does not have to proceed under the *McDonnell Douglas* burden-shifting framework that applies in circumstantial evidence cases. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). Accordingly, Plaintiff does not need to show pretext for Defendant's alleged non-discriminatory reason for making the nursing assignment, as argued by Defendant at Page ID.353 of its Brief.

Defendant suggests in order for the discriminatory statements to establish direct evidence they must be made by a person involved in the employment decision. Defendant's narrow interpretation is not supported by the Sixth Circuit, which has held remarks by those who significantly influence the decision-making process can constitute direct evidence. *Sharp v. Aker Plant Servs. Group*, 726 F.3d 789, 798 (6th Cir. 2013).

There is no question the patient significantly influenced the decision-making process in this case.  The only reason Plaintiff was removed from providing further care to the patient was because of the patient's request.  Contrary to Defendant's argument, this case is similar to other cases in which Courts have held there is a factual dispute of race discrimination when an employer excludes an employee based on a customer's or patient's racial preference.  Several cases present similar facts to the present case:  *Chaney v. Plainfield*, 612 F.3d 908 (7th Cir. 2010), *Ferrill v. Parker Group, Inc.*, 168 F.3d 468 (11th Cir. 1999), *Patterson v. UPMC South Hills Health System Home Health, L.P.*, 2005 U.S. Dist. LEXIS 47610, attached herein as Ex. 13, and *McCrary v. Oakwood Healthcare, Inc.*, 170 F. Supp. 3d 981 (E.D. Mich. 2016).   All

these cases involved African American employees who were reassigned by their employer based on a customer or patient preference.

In *Chaney, supra*, a Title VII case, defendant nursing home prohibited the plaintiff, an African American certified nursing assistant, from caring for a White resident who did not want to be attended by African American caregivers. The Seventh Circuit rejected the defendant's assertion that its deference to the patient's expressed preference was "reasonable" as the Seventh Circuit held: "[i]t is now widely accepted that a company's desire to cater to the perceived racial preference of its customers is not a defense… for treating employees differently based on race." *Id.* at 913. See also *E.E.O.C. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 370 (7th Cir. 2011). (allegation that plaintiff was assigned to a specific territory because of his race "falls squarely within [plaintiff's] allegation of discrimination and the 'terms and conditions' of employment").

In *Ferrill, supra*, a telephone marketing corporation that was hired to perform work for political candidates would segregate employees, when requested by customers, by assigning separate calling areas and scripts according to race. *Id.* at page 471. The plaintiff in *Ferrill* brought

10

a 42 USC § 1981 claim against the defendant. The Court found that the segregation of assignments based on race was direct evidence of intentional race discrimination in job assignments in violation of § 1981. *Id.* at 472.

In *Patterson, supra*, a patient's daughter asked the defendant not to send black employees into the home because her father was prejudiced. The admission nurse made a notation "no black RNs" in the patient's Case Management Tool and weekly schedules. *Id.* However, the scheduling assistant still scheduled the plaintiff to visit the patient on two occasions. *Id.* The plaintiff saw the notation on the schedule for "no black RNs", but still cared for the patient in question. According to the defendant, its procedures for responding to such requests was that they would not be honored. *Id.*

In *McCrary v. Oakwood Healthcare,supra*, this Court denied summary judgment when a patient refused treatment from the plaintiff twice and a notation in the patient's chart was made that the patient had made a request he did not want any black people taking care of him. Defendant incorrectly states that in *McCrary*, the plaintiff was advised to document the initial request for no black caregivers in the chart by the

defendant. *Id*. at pp. 983-984. Indeed, unlike the present case, the patient in *McCrary* was never told his request would be honored by the defendant, nor was there evidence that defendant ever honored the request. *Id*. Notably, this Court focused on the hospital's failure to provide a policy for handling race-based requests by patients in concluding a reasonable jury could find the defendant intentionally allowed for assignments of its employees based on race. *Id*. at p. 987.

Contrary to Defendant's arguments, *Chaney*, *Patterson*, and *McCrary,* do not all involve an instruction in the patient's medical record that the patient not be assigned any African-American caregiver and do not all involve the plaintiffs being advised in "no uncertain terms" they could not provide care. As stated above, in *McCrary*, there was never an instruction in the patient's record that the patient not be assigned African-American caregivers and the plaintiff was never advised not to provide care; indeed, she was paged twice to provide respiratory care to the patient. In *Patterson*, even though there was a notation in the record, the plaintiff was still scheduled and provided care to the patient in question.

The facts in the present case, like the cases cited above, create a factual dispute of racial discrimination.  Plaintiff was assigned the patient in room 881-2 for her entire shift.  She was removed from caring for that patient, only after the patient requested.  The manager in charge, Kopriva, would not have removed Plaintiff from her assignment, if the patient did not request it.  Before talking with the patient, Plaintiff told Kopriva she overheard the patient say she did not want "no black bitch taking care of her."  (Ex. 1, pp. 80, 83-84; Ex. 4, 19).  Plaintiff also put in her progress notes for the patient that the patient was overheard saying, "I do Not want that black bitch taking care of me."  (Ex. 8).  Kopriva understood the patient did not want Plaintiff to care for her based on race.  (Ex. 4, pp. 22-24).  When Kopriva talked to the patient, Plaintiff heard the patient tell Kopriva she did not want that "black lady" or "a black nurse".  (Ex. 1, pp. 52-52).  Kopriva recalled the patient saying she did not like Plaintiff's attitude, but admitted that was not a valid reason for a patient to request a different nurse.  (Ex. 4, p. 31).  After Kopriva talked to the patient, she told Plaintiff and others if either patients in the room needed assistance, Moylan (a White nurse) would go in the room instead of Plaintiff.  (Ex. 1, p. 53; Ex. 5, p. 11).  Notably, Defendant has

no policy on how to address when a patient requests care and it is based on race. (Ex. 5, pp. 8-9). Indeed, at a meeting on November 8, 2017, a few days after the incident when it was discussed, nothing was said by those present (which included human resources director and managers) that such requests are not honored. Instead, the incident was compared to a Middle Eastern female patient requesting not to have a male nurse for religious reasons. (Ex. 1, p. 190; Ex. 10).

To suggest no reasonable juror could conclude that race was involved in the decision to remove Plaintiff from her assigned patient is disingenuous. Kopriva had no guidance from her employer on how to handle a patient request for change in care based on race, other than granting such requests. (Ex. 4, p. 24). Looking at the facts in the light most favorable to Plaintiff, it was not a coincidence Plaintiff was replaced with a White nurse, after Kopriva knew the patient was heard saying she did not want that "black bitch" caring for her and the patient provided no legitimate reason for making the request. Accordingly, there is factual dispute of racial discrimination and summary judgment should be denied.

## II.   There is a Genuine Issue of Material Fact that Plaintiff Suffered an Adverse Employment Action

**for purposes of her Title VII and Elliott-Larsen Civil Rights Claims.**

Defendant states Plaintiff did not suffer an adverse action as defined by *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007), holding the plaintiff must show a "materially adverse change in the terms or condition of employment," to demonstrate an adverse employment action. Plaintiff disputes that her status and benefits of employment remained the same as a result of being removed from the assignment. Plaintiff was removed from the patient's assignment and a White nurse was told to provide patient care in Plaintiff's place. However, the patient care was not properly transferred. (Ex. 1, p. 57; Ex. 7, p. 19). Despite being precluded from caring for the patient, Plaintiff, who is a registered nurse, was still required to sign rounding sheets and give a report to the oncoming nurse at the end of her shift; even though she had no firsthand knowledge of the patient's care for the past several hours. (Ex. 1, pp. 54, 56, 134). Plaintiff was forced to put her license in jeopardy to accommodate the discriminatory reassignment by Defendant.

Defendant also argues there cannot be an adverse employment action when the impact on the plaintiff is temporary or *de minimis*.

Defendant cites *Bowman v. Shawnee State Univ.*,for its proposition there is no adverse action if the impact is temporary. 220 F.3d 456 (6th Cir. 2000)(the plaintiff was temporarily removed from job duties for non-protected reasons and claimed harassment).   Defendant also cites *Crane v. Mary Free Bed Rehab. Hosp.*, which is distinguishable because the plaintiff was a supervisor, not a direct care employee, like Plaintiff. 2015 U.S.Dist. LEXIS 182064, attached as Exhibit 12.

Defendant cites *Arafi v. Mandarin* Oriental, involving a Muslim plaintiff alleging religious discrimination who was removed from providing services for two floors in a hotel temporarily.  Under Title VII, the law permits discrimination of certain protected classifications of employees based on religion, sex, or national origin, if found to be a bonafide occupational qualification ("BFOQ").   42 U.S.C. §2000e-2(e). Importantly, the BFOQ exception does not apply to race.  *Miller v. Texas State Bd. Of Barber Examiners*, 615 F.2d 650 (5th Cir. 1980). Accordingly, while there may be circumstances where gender or religion can be taken into account as a BFOQ, race cannot.

The the language of *McCrary* concerning whether a civil rights violation limited in time, or *de minimis*, is still actionable is instructive.

The *McCrary* Court held that even a brief abridgement of a plaintiff's rights is actionable quoting the District of Maryland:

> Section 1981 violations need not be extended or unmitigated to qualify the plaintiff for damages. Although the length or nature of the violation may affect the plaintiff's award, the fact that an act of contractual discrimination was short or *de minimis* does not make it any less a violation. Indeed, '[c]ivil rights are founded not on a relativist calculus of discriminatory behavior but on the principle that deprivations of rights resulting from racial animus are unlawful.' *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 485-86 (D. Md. 1999) (quoting *Yates v. Hagerstown Lodge No.* 212, 878 F. Supp. 788, 796 (D. Md. 1995)); see also *Patterson*, 2005 U.S. Dist. LEXIS 47610, 2005 WL 6720844, at *9 (finding support for the plaintiff's § 1981 claim arising from the notation in a patient's record of "no black RNs", finding 'it . . . clear that, even in the absence of a monetary loss, job assignments based on race constitute adverse employment actions because such assignments affect the terms and conditions of employment.'). *Id.*

Defendant also suggests it does not violate the Civil Rights Act for an employer to make assignments  based on race when an employee retains the same work hours, responsibilities, duties, status, pay, and benefits.  In other words, according to the defense, segregating employees in patient assignment only based on race does not violate the Civil Rights Act.  Title VII specifically states that segregation in employment is an unlawful employment practice. See 42 U.S.C. 3000e-2(a)(2)("It shall be an unlawful employment practice for an employer to …segregate…his employees…in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his

status as an employee because of such individual's race…").  To suggest that an employee whose employment conditions remain equal, even if he or she is segregated in assignment, does not have a discrimination claim, is the same rationale set forth in *Plessy v. Ferguson*, 163 U.S. 537 (1896). Such precedent has long been overruled by *Brown v. Board of Education*, 347 U.S. 483 (1954), which held separate but equal does not mean there is no racial discrimination.  Likewise, the Civil Rights Act is violated where a plaintiff is removed from caring for a patient based on race, such as the present case, and summary judgment should be denied.

### III. Plaintiff's Testimony Concerning What the Patient Said Goes to Credibility and is Improper to Exclude.

Defendant suggests Plaintiff cannot present a genuine issue of material fact of race discrimination because Defendant believes she is not credible.   As this Court knows, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 1986).   The unpublished case out of the Sixth Circuit

overruling an Eastern District of Kentucky decision excluding testimony, contradicts Defendant's argument that Plaintiff's testimony should be excluded. See *Hanson v. Madison County. Det. Ctr.*, 736 Fed. Appx. 521, 537 (6th Cir. 2018)(the district court was overruled by the Sixth Circuit and testimony by the plaintiff was considered even though it was found to be conflicting).

Defendant seeks to exclude Plaintiff's testimony. Plaintiff testified she heard the patient say she did not want that "black bitch" caring for her, which was corroborated by Kalonda. Defendant's own witness, Kopriva, testified Plaintiff told her the patient said that on the morning in question. In addition, before her shift ended, Plaintiff recorded the statement in the patient's progress notes. Defense counsel suggests its shell game at Plaintiff's deposition warrants Plaintiff's testimony being excluded; plaintiff was clearly confused as to what defense counsel was asking. (Ex. 1, pp. 175-177).

Defendant also argues Plaintiff's testimony regarding what she heard the patient tell Kopriva should be excluded, claiming Plaintiff's testimony was inconsistent. Plaintiff was asked repeatedly to recount what she heard  the patient tell Kopriva. Plaintiff consistently told

defense counsel she heard the patient say she did not want "that black lady" and that she did not want "a black nurse." Defense counsel's characterization that Plaintiff was inconsistent is simply not accurate when the testimony is reviewed. Notwithstanding this, even if Plaintiff's testimony was inconsistent, and according to Defendant not credible, credibility issues are not for the judge on summary judgment.

IV. **Plaintiff's Testimony as to What the Patient Said is Admissible Even if Not Fully Documented**.

Defendant continues its argument to exclude Plaintiff's testimony on summary judgment based on credibility. Defendant seeks to exclude Plaintiff's testimony that the patient told Kopriva she did not want a black nurse because it was not documented. Notably, the testimony of Defendant's witnesses, under Defendant's argument, would have to be excluded; Ward has no documentation from her so-called investigation (Ex. 2, pp. 35 and 39) and neither Kopriva nor Ward documented their encounter with the patient in the patient's progress (Ex. 2), which is arguably protocol. At the time of the incident, Defendant's own contemporaneous documentation states, "Teoka stated that the patient in 881-bed #2 stated she didn't want her to be her nurse because she was black." (Ex. 10).

Contrary to Defendant's argument, Plaintiff's testimony is not in conflict with contemporaneous documentation.  Plaintiff's testimony is consistent with her documentation and adds additional facts, which does not conflict with the documents.  Defendant's argument that Plaintiff's Complaint should have included the testimony it seeks to exclude, is contrary to basic hornbook law concerning notice pleadings in Federal Court; Rule 8 only requires, "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).  Plaintiff is not required to plead all facts known.

The cases cited by Defendant are distinguishable and speak to situations where a witness's testimony contradicts prior documentation, e.g. *Seshadri v. Kasraian*, involved documentation that said there were two authors and a subsequent unexplained affidavit stated there was only one.  In the present case, Plaintiff's testimony does not contradict the documentation.  Indeed, as set forth above, it is consistent.  At the time of the incident, Plaintiff made clear in her statements and documentation, that she was removed from caring for a patient based on race.  Understandably, although the patient said several things, the most racially derogatory of those statements, as corroborated by another

witness, was the patient's exclamation that she did not want that "black bitch" caring for her, which is well-documented. It goes without saying the patient did not want a black nurse and Plaintiff's testimony in that regard is consistent with the documentation and should not be excluded.

V. **Plaintiff's Testimony about the Patient's Statements is Admissible and Not Hearsay.**

Defendant seeks to exclude Plaintiff's testimony regarding what the patient said, which included: "I do not want that black bitch taking care of me" and "I do not want a black nurse." The former statement was heard by Plaintiff before she went to the manager and was documented in the patient's progress notes. The latter statement was made while Plaintiff overheard the patient talking with Kopriva.

As to the first statement by the patient that she did not want that "black bitch" taking care of her. There are several hearsay exceptions which make the statement admissible, i.e., Fed.R.Evid. 803(2), 803(3), 803(4), and/or 803(6). Moreover, the statement is admissible to show the racial attitude of the patient, which is not hearsay. *See Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1249-1250 (6th Cir. 1995).

Under Fed.R.Evid. 803(2) (Excited Utterance), a hearsay statement is admissible, if it relates to, "a statement relating to a … condition, made

while the declarant was under the stress of excitement, that it caused." Plaintiff testified shortly before she heard the racially derogatory statement by the patient, the patient told Plaintiff not to touch her, but she let the White nursing assistant touch her. Plaintiff then heard the patient saying, "I don't want that black bitch caring for me." The patient was still under the stress of that event when she made that comment immediately following.

The comment was documented in the record by Plaintiff. The record of the comment is admissible under Fed.R.Evid. 803(4) and/or 803(6). As to 803(4), Defendant simply concludes without explanation or support that the statement does not relate to treatment of the patient. Defendant does not explain how the patient's statement that she does not want to be cared for by that "black bitch," does not relate directly to the patient being treated. The exception has been broadly interpreted by the Sixth Circuit as to what relates to treatment, e.g., *Brandt v. Curtis*, 138 Fed.Appx. 734 (6th Cir. 2005)(statement by a patient in the medical record identifying an assailant in a child abuse case goes to diagnosis and treatment). Even if the Court is not convinced that 803(4) applies, at

minimum, the progress notes are admissible under 803(6), as records of a regularly conducted activity.

Another hearsay exception, contrary to Defendant's argument, is 803(3), as a then-existing mental, emotional, or physical condition.   The Sixth Circuit has held evidence of discriminatory purpose is admissible under 803(3).  *Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671, 693-694 (1979); see also, *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1249-1250 (6th Cir. 1995).   Finally, the statement by the patient demonstrates the racial attitude of the patient and, if used for that purpose, is not hearsay.  Defendant claims Plaintiff was not removed as the patient's nurse based on race, however, the statement from the patient is relevant to show the racial attitude of the patient and is admissible for that purpose. *Talley, supra*.

With regard to the statements by the patient made to Kopriva, those statements are admissible under Fed.R.Evid. 803(2) and/or 803(3). The Sixth Circuit has found statements made 40 minutes after an event can still be admissible as an excited utterance.  e.g., *Maggard v. Ford Motor Co.*, 320 Fed.Appx. 367 (6th Cir. 2009), attached as Ex.15.  The patient was still under the stress of the event, not wanting a black nurse

24

to touch her, and she made the statement to Kopriva.  The patient did not have time to fabricate her statement based on her medical condition and stay at the hospital.  Accordingly, it is admissible under 803(2).

The statement is also admissible pursuant to 803(3), then-existing mental, emotional, or physical condition.  The statements by the patient that she did not want that "black lady" or "a black nurse," go to the patient's intent, motive, mental feeling, and/or plan.  This Court has ruled similar hearsay statements are admissible under 803(3), e.g., *United States v. West*, 2011 U.S. Dist. LEXIS 34520, attached as Ex. 14. Even if not admissible under 803(3), the statements are admissible to show the declarant's racial attitude under *Talley, supra.*

Essentially, Defendant's true motivation for wanting to exclude the patient's statements is because it is prejudicial to Defendant.   As indicated above, the statements are admissible.  This Court has pointed out, "virtually all relevant evidence against a defendant is prejudicial to the defendant." *United States v. West, supra.*  However, where it is highly probative, as in this case, any danger of prejudice is outweighed.  When the evidence is considered in the light most favorable to Plaintiff, summary judgment should be denied.

## **CONCLUSION**

WHEREFORE, for the reasons more fully stated above, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully submitted,

GAFKAY LAW, PLC

Dated: <u>5/31/2019</u>

s/Julie A. Gafkay
Julie A. Gafkay (P53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, Michigan  48734
(989) 652-9240
jgafkay@gafkaylaw.com

## <u>CERTIFICATE OF SERVICE</u>

On May 31, 2019 the foregoing pleadings, Plaintiff's Response to Defendant's Motion for Summary Judgment with Brief In Opposition Pursuant to FRCP 56 with Exhibits was electronically filed with the Clerk of the Court through the Court's CM/ECF System, which will send notification to such filings to the  attorneys of record, Regan K. Dahle, Michael Griffie and Doaa K. Al-Howaishy.

Respectfully submitted,

s/Julie A. Gafkay
JULIE A. GAFKAY (P-53680)
Attorney for Plaintiff
175 S. Main Street
Frankenmuth, Michigan 48734
(989) 652-9240
 jgafkay@gafkaylaw.com